UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

96-21115
_____


MIRTHA URBANO,

                                    Plaintiff-Appellant,

                    versus

          CONTINENTAL AIRLINES, INC.,

                                    Defendant-Appellee.

_____

   Appeal from the United States District Court for the Southern
                        District of Texas
_____
                        April 15, 1998

Before REAVLEY, JONES, and BENAVIDES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

        Appellant Urbano challenges the district court's holding
that a company policy of granting light-duty assignments only to
workers who suffer occupational injuries does not violate Title
VII, as amended by the Pregnancy Discrimination Act ("PDA").
Because the PDA protects pregnant women only from being treated
differently than similarly-situated non-pregnant employees, it does
not guarantee light-duty assignments.  We affirm the judgment as a
matter of law for Continental Airlines, Inc.

                        BACKGROUND

        In 1990, Mirtha Urbano began working for Continental
Airlines in various capacities, most recently as a Ticketing Sales

Agent. In that job, she assisted customers with sales and checking-in passengers and their baggage, often lifting loads in excess of twenty pounds.

In October of 1994, Urbano learned she was pregnant. Shortly thereafter, she began suffering low-back discomfort and went to see her doctor. The doctor ordered her to refrain from lifting anything over twenty pounds for the balance of her pregnancy.

Pursuant to these instructions, Urbano requested to work in a Service Center Agent position, which does not require employees to lift heavy loads. The request was denied because Continental's transitional duty policy grants light-duty assignments only to employees who suffer an occupational injury. Employees with a nonoccupational injury or illness who would like a less physically demanding position must go through Continental's normal duty assignment system, in which employees bid for the positions of their choice, and the positions are assigned by seniority. Continental deemed Urbano ineligible under its policy for a mandatory light duty transfer. Unable to return to work and comply with her doctor's restrictions, Urbano was forced to use her accrued sick days, followed by a ninety-day family leave and then unpaid medical leave.

By March of 1995, Urbano filed charges of discrimination with the E.E.O.C. On March 30, 1995, Urbano received her right-to-sue letter and timely filed suit in federal district court,

alleging, *inter alia*, a disparate treatment theory of pregnancy discrimination.

After the district court granted Continental's motion judgment as a matter of law, this appeal followed.[1]

**STANDARD OF REVIEW**

This court reviews the grant of summary judgment *de novo*, applying the same standards as the district court. *See Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). Summary judgment is appropriate, when, viewing the evidence in the light most favorable to the nonmoving party, the record reflects that no genuine issue of any material fact exists, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-24, 106 S. Ct. 2548, 2252-53 (1986); *see also* Fed. R. Civ. P. 56(c). Once the movant carries his burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

---

[1]In addition to her claim of discrimination under the theory of disparate treatment, Urbano challenges the district court's order granting judgment as a matter of law on her claims of disparate impact and retaliatory discharge under the PDA, as well as her claim of retaliatory discharge under the FMLA. We have reviewed the briefs and the pertinent portions of the record and find no reversible error. Urbano did not adduce evidence sufficient to create a genuine issue of material fact on those claims. Accordingly, we affirm on these issues for essentially the reasons relied upon by the district court.

**DISCUSSION**

Title VII of the 1964 Civil Rights Act "prohibits various forms of employment discrimination, including discrimination on the basis of sex." *California Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 276-77, 107 S. Ct. 683, 687 (1987). With the passage of the PDA in 1978, Congress amended the definitional section of Title VII as follows:

> The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work . . . .

42 U.S.C. § 2000e(k) (1994). A claim under the PDA is analyzed like Title VII discrimination claims in general. *See Garcia v. Women's Hosp.*, 97 F.3d 810, 812-13 (5th Cir. 1996).

To establish a prima facie case of discrimination under Title VII, a plaintiff may prove her claim either through direct evidence, statistical proof, or the test established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). The *McDonnell Douglas* test requires the plaintiff to show: (1) she was a member of a protected class, (2) she was qualified for the position she lost, (3) she suffered an adverse employment action, and (4) that others similarly situated were more favorably treated. *See Geier v. Medtronic, Inc.*, 99 F.3d 238, 241 (7th Cir. 1996) (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S.

4

Ct. at 1824). Once the employer articulates a legitimate, nondiscriminatory reason for the employment action, however, the scheme of shifting burdens and presumptions "simply drops out of the picture," and "the trier of fact proceeds to decide the ultimate question: whether plaintiff has proved 'that the defendant intentionally discriminated against [her]' because of [her sex]." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S. Ct. 2742 (1993) (internal citation omitted).

The district court found that Urbano failed to establish the second prong of her prima facie case for disparate treatment. Specifically, the district court held that Urbano could not "provide evidence creating a genuine issue as to whether she was qualified for transfer into a light-duty position, i.e., that she sustained a work related injury." Continental also asserts that Urbano failed to offer evidence that she was treated differently under Continental's policy than other employees with non-occupational injuries.

We agree.

Continental treated Urbano in exactly the same manner as it would have treated any other worker who was injured off the job. Light duty assignments were at a premium. Each of the forty-eight employees who received a light-duty assignment in 1994 had suffered an occupational injury. Urbano was not denied a light-duty assignment because of her pregnancy, but because her back troubles were not work related. Under the PDA, an employer is obliged to

ignore a woman's pregnancy and "to treat the employee as well as it would have if she were not pregnant." *Piraino v. International Orientation Resources, Inc.*, 84 F.3d 270, 274 (7th Cir. 1996). Thus, Continental was entitled to deny Urbano a light-duty assignment as long as it "treat[s] similarly affected but nonpregnant employees" the same. *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 738 (7th Cir. 1994); *see also Guerra*, 479 U.S. at 285-86, 107 S. Ct. at 692. Without a showing that Continental adhered to the requirements of the light-duty policy only in cases involving its pregnant workers, Urbano cannot maintain that she was a victim of discrimination under the PDA. *See Rhett v. Carnegie Ctr. Assocs. (In re Carnegie Ctr. Assocs.)*, 129 F.3d 290, 296 (3d Cir. 1997); *Geier*, 99 F.3d at 242-43; *Troupe*, 20 F.3d at 738.

Urbano argues that she was physically and mentally qualified to perform the duties required for light-duty assignment, but that Continental's policy of granting light duty only to employees who are injured on the job deprived her of an employment opportunity on the basis of her pregnancy. Under this theory, employees who are unable to perform their regular duties because of their pregnancy will never be able to enjoy the same benefits as employees who suffer occupational injuries, even though these two groups are no different in their ability or inability to work. Urbano concludes that Continental's policy discriminated against her on the basis of her pregnancy and, therefore, violates the PDA.

Appellant relies heavily on the Sixth Circuit's opinion in *Ensley-Gaines v. Runyon*, 100 F.3d 1220 (6th Cir. 1996). At the heart of *Ensley-Gaines* was a Postal Service policy of granting "limited duty" assignments to employees who were injured on the job, and "light duty" assignments to employees with non-work related conditions. Because the "light duty" assignments were granted at the employer's discretion and "limited duty" assignments were granted as employee entitlements, a pregnant employee who received light duty for only a few hours a day challenged the policy as being violative of Title VII. The Sixth Circuit held that a plaintiff establishes a prima facie case of discrimination when she can demonstrate that her employer's policy treats pregnant women differently than workers who are injured on the job. The Sixth Circuit reasoned that the PDA requires employers to treat pregnant employees in the same manner as they would other employees who were similarly situated with respect to their ability or inability to work. *See id.* at 1226. Because pregnant employees and employees who were injured on the job are no different in their ability or inability to do their work, the latter cannot receive more favorable treatment than the former.

The appellant argues that "[t]he Sixth Circuit's reasoning is sound because it would defeat the very purpose of the PDA to allow an employer to deny pregnant employees opportunities because they could not meet a 'qualification' that was itself discriminatory." On the contrary, the rule advocated by Urbano and

7

the Sixth Circuit effectuates discrimination contrary to the PDA -- in favor of pregnant employees.

The PDA must be understood in the context in which it was enacted. *See Guerra*, 479 U.S. at 284, 107 S. Ct. at 691. The Supreme Court held in *General Electric Co. v. Gilbert*, 429 U.S. 125, 136-138, 97 S. Ct. 401, 408-09 (1976), that under Title VII, discrimination on the basis of pregnancy was not sex discrimination. In the wake of this decision, Congress passed the PDA, Pub. L. No. 95-555, 92 Stat. 2076 (1978). The PDA amended the definitional provision of Title VII "to specif[y] that sex discrimination includes discrimination on the basis of pregnancy." *Guerra*, 479 U.S. at 277, 107 S. Ct. at 687. In so doing, Congress "unambiguously expressed its disapproval" with the *Gilbert* decision. *Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669, 678, 103 S. Ct. 2622, 2628 (1983).

Against this legislative backdrop, most courts have held that the PDA does not impose an affirmative obligation on employers to grant preferential treatment to pregnant women. *See Guerra*, 479 U.S. at 284-86, 107 S. Ct. at 691-92; *In re Carnegie Ctr. Assocs.*, 129 F.3d at 295 ("[T]he PDA does not require that employers treat pregnant employees better than other temporarily disabled employees."); *Lang v. Star Herald*, 107 F.3d 1308, 1312 (8th Cir. 1997) ("[The PDA] does not create substantive rights to preferential treatment."); *Garcia*, 97 F.3d at 813. ("The PDA does not mandate preferential treatment for pregnant women . . . .");

8

*Armstrong v. Flowers Hosp., Inc.*, 33 F.3d 1308, 1312 (11th Cir. 1994) ("Rather than introducing new substantive provisions protecting the rights of pregnant women, the PDA brought discrimination on the basis of pregnancy within the existing statutory framework prohibiting sex-based discrimination."); *Troupe*, 20 F.3d at 738 ("The Pregnancy Discrimination Act does not . . . require employers to offer maternity leave or take other steps to make it easier for pregnant women to work . . . ."). By defining sex discrimination under Title VII to include pregnancy, Congress intended to do no more than "re-establish principles of Title VII law as they had been understood prior to the *Gilbert* decision," *Newport News*, 462 U.S. at 679, 103 S. Ct. at 2628, and ensure that female workers would not be treated "differently from other employees simply because of their capacity to bear children," *Johnson Controls,* 499 U.S. at 205, 111 S. Ct. at 1206. The Sixth Circuit drew the opposite conclusion without citing any of the opposing circuit court decisions and after distinguishing, unpersuasively, a previous case from its own court. The impact of Ensley-Gaines is unequivocally to treat pregnant employees who need light duty work better than other employees with a similar medical need whose conditions arose off-the-job. This is contrary to Guerra. 479 U.S. at 291, 107 S.Ct. at 695 (holding that while the PDA does not mandate better treatment for pregnant than non-pregnant employees, it does not pre-empt a state law that

9

"establishes benefits that employers must, at a minimum, provide to pregnant women").

In this case, Continental treated Urbano the same as it treats any other worker who suffered an injury off duty. There is no probative evidence that Continental's distinction between occupational and off-the-job injuries was a pretext for discrimination against pregnant women or that it had a disparate impact on them. Urbano's claim is thus not a request for relief from discrimination, but rather a demand for preferential treatment; it is a demand not satisfied by the PDA.[2] As long as pregnant employees are treated the same as other employees injured off duty, the PDA does not entitle pregnant employees with non-work related infirmities to be treated the same under Continental's light-duty policy as employees with occupational injuries.

### CONCLUSION

For the foregoing reasons, the district court's order granting judgment as a matter of law in favor of the employer is **AFFIRMED**.

---

[2]Indeed it could be argued that granting pregnant employees a benefit men are ineligible to receive is not only not required under the PDA, but it is also not permissible under Title VII, for such a policy would treat a male employee "'in a manner which but for that person's sex would be different.'" *Newport News*, 462 U.S. at 683, 103 S. Ct. at 2631 (quoting *Los Angeles Dep't of Water & Power v. Manhart*, 435 U.S. 702, 711, 98 S. Ct. 1370, 1377 (1978)). The PDA merely specifies that under Title VII an employer must not discriminate on the basis of a women's pregnancy; it does not "erase the original prohibition against discrimination on the basis of an employee's sex." *Newport News*, 462 U.S. at 685, 103 S. Ct. at 2632.