RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 06a0163p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

AMANDA REEVES,

    *Plaintiff-Appellant,*

    *v.*

SWIFT TRANSPORTATION COMPANY, INC., also
known as Swift Transportation Corporation,

    *Defendant-Appellee.*

No. 05-5271

---

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 03-02731—Bernice B. Donald, District Judge.

Argued: March 14, 2006

Decided and Filed: May 16, 2006

Before: NORRIS, SUHRHEINRICH, and ROGERS, Circuit Judges.

---

## COUNSEL

**ARGUED:** Michael D. Cooke, Iuka, Mississippi, for Appellant. Jeff Weintraub, WEINTRAUB, STOCK & GRISHAM, Memphis, Tennessee, for Appellee. **ON BRIEF:** Michael D. Cooke, Iuka, Mississippi, for Appellant. Jeff Weintraub, J. Gregory Grisham, WEINTRAUB, STOCK & GRISHAM, Memphis, Tennessee, for Appellee.

---

## OPINION

---

ROGERS, Circuit Judge. This is an action for pregnancy discrimination, brought under 42 U.S.C. § 2000e(k), on a theory of disparate treatment. The plaintiff, Amanda Reeves, formerly worked for the defendant-employer as an over-the-road truck driver. She claims that her former employer, Swift Transportation Company, Inc., unlawfully terminated her when she became pregnant. Swift terminated Reeves pursuant to a pregnancy-blind policy denying light-duty work to employees who could not perform heavy lifting and also were not injured on the job. The district court granted Swift's motion for summary judgment. We affirm the judgment because the terms of Swift's light-duty policy do not support an inference of pregnancy discrimination, and because Reeves has not supplied any Rule 56 evidence tending to prove pretext or discriminatory intent.

Reeves started working for Swift as a truck driver around August 9, 2002. Previously, when Reeves applied for her job around July 29, 2002, Swift informed Reeves that working as a truck

1

driver required occasional bending, twisting, climbing, squatting, crouching, and balancing. Reeves understood that her job could require her to use a dolly to push or pull freight weighing up to 200 pounds, and occasionally to push freight weighing up to 100 pounds with brute force. During the job application process, Reeves signed a form that represented to Swift that she could bear this level of physical strain. Reeves further represented that she could lift 75 pounds and carry it 56 feet, as well as lift 60 pounds over her head. Swift acknowledges that Reeves was qualified to be a truck driver at the time she was hired. Swift also says that its truck drivers do in fact unload their trucks perhaps once or twice a month, although Reeves herself never unloaded her truck in the three months she worked for Swift. Sally Redwine, a Swift employee, said in her deposition that she does not know of any specific drivers who have had to push or pull 200 pounds.

About three months after Reeves started working for Swift, on November 2, 2002, Reeves learned that she was pregnant. Reeves saw her physician, Dr. Paul Odom, who restricted her to light work pending her first appointment with an obstetrician. Dr. Odom wrote this restriction in a letter that Reeves showed to Swift when she returned to work. Swift told Reeves that it had no light work for her to do and sent her home. According to the complaint, Reeves' obstetrician, Dr. Jerry Martin, told her that "everything was normal and that she could continue to work," if she performed light work only. Dr. Martin told her not to lift more than 20 pounds. He gave Reeves a letter setting forth these restrictions.

Thereafter, Reeves informed Sally Redwine that she could not perform regular truck driver duties. She continued to request special light work assignments. Swift continued to insist that it had no light work for her to do. Reeves called Swift on the phone "on a daily basis" to see if she could get a light work assignment. On November 14, 2003, she made her last such call to Swift. Swift informed Reeves of her termination because it had no work for her to do. Swift terminated Reeves effective November 20, 2002. Reeves was not entitled to leave under the Family and Medical Leave Act because she had worked for Swift for less than a year. *See* 29 U.S.C. § 2611(2)(A).

At all times relevant to this lawsuit, Swift maintained a policy of providing light-duty work only to employees on workers' compensation leave, i.e., employees who had sustained on-the-job injuries. Such injured employees receive light-duty assignments that accommodate their injuries and Swift's work needs. Light-duty assignments include "basic office work such as answering phones for recruiting, entering orders, filing, handing out towels and the like."

Reeves stated in her deposition that she never sustained a job-related injury. She also stated that, to her knowledge, no Swift employee had been given a light work assignment who was not on workers' compensation leave. As of the time of Sally Redwine's deposition in 2004, all employees injured on the job who could not perform heavy lifting received light work if they sought it. Swift maintains that if Reeves had been injured on the job, she would have received light work through the workers' compensation system, her pregnant condition notwithstanding. Swift has made no exceptions to its light-duty policy.

On January 7, 2003, Reeves filed an Equal Employment Opportunity Commission (EEOC) charge alleging that Swift had engaged in pregnancy discrimination against her. More than seven months later, on July 29, 2003, the EEOC issued her a right to sue notice. This action, alleging violations of the Pregnancy Discrimination Act (the Act), 42 U.S.C. § 2000e(k), followed. The district court held that Swift was entitled to summary judgment at the pretext phase of the *McDonnell Douglas* test. *See generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The district court held that Reeves had established a prima facie case for pregnancy discrimination. The district court ultimately granted summary judgment in favor of Swift because Reeves had produced no Rule 56 evidence tending to prove that Swift's light-duty policy was a pretext for pregnancy discrimination. The policy is not a pretext, the district court reasoned, because it does not

take account of pregnancy and Swift did not make exceptions for nonpregnant employees while enforcing the policy against pregnant employees.

The district court noted that "to hold otherwise [i.e., to hold for Reeves] would result in the Court affording pregnant women more benefits and better treatment than other employees, instead of equal benefits and the same treatment as intended by the" Act. "For instance," the district court continued, "if the Court determined that Plaintiff was entitled to light-duty work . . . the effect would be to provide greater protection and benefits to pregnant women than to other employees who suffered from a non-work related injury or illness, such as a heart-attack or cancer."

This court reviews the grant of summary judgment de novo. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999). "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if its proof or disproof might affect the outcome of the suit under the governing substantive law. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The evidentiary standard of proof in a motion for summary judgment is the same one that "would apply at the trial on the merits." *Id.* at 252.

When reviewing a district court's grant of summary judgment, the court may not determine the credibility of witnesses or weigh evidence. *Id*. at 255. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* "When the moving party," however, "has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmovant must provide evidence beyond the pleadings setting "forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

Swift is entitled to summary judgment in its favor because Reeves has supplied no Rule 56 evidence that could permit a rational juror to find that Swift discriminated against her on the basis of her pregnancy. No rational juror could find unlawful pregnancy discrimination on this record for two reasons. First, Reeves has come forward with no direct evidence of discrimination. Although Reeves argues that the terms of Swift's light-duty policy require the conclusion that discrimination occurred, in fact Swift's light-duty policy is pregnancy-blind and supports no such inference. Second, Reeves has neither alleged nor supported with circumstantial evidence the notion that Swift terminated her with discriminatory intent or that Swift's policy is a pretext for discrimination. Given the lack of direct or circumstantial evidence supporting Reeves' claim, the district court properly granted summary judgment in favor of Swift.

Reeves has produced no direct evidence of pregnancy discrimination. Direct evidence of discrimination is evidence that proves that discrimination has occurred without requiring further inferences. *See Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004); *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). Reeves has come forward with no such evidence. In her brief, Reeves argues in effect that the terms of Swift's light-duty policy constitute direct evidence of discrimination, but she is incorrect because Swift's light-duty policy is pregnancy-blind.

In her brief, Reeves alleges that the terms of Swift's policy constitute a "per se violation" of the Act. This circuit has not heretofore recognized "per se violations" of the Act. We construe Reeves' claim of a "per se violation" to mean that Swift's light-duty policy is per se *discrimination* in the sense that the policy's terms require the conclusion that discrimination has occurred without

further evidence or inferences; in other words, that Swift's policy is direct evidence of discrimination.

Reeves says that the policy's terms are themselves discriminatory because they provide light-duty work to employees injured on the job who can perform no heavy lifting but not to pregnancy employees who can do no heavy lifting. This part of the policy, Reeves argues, violates the Act's provision that pregnant employees "shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work . . . ." 42 U.S.C. § 2000e(k). A person injured on the job with the same work abilities as Reeves, the argument goes, receives light duty and therefore has been treated better than Reeves. This better treatment, in Reeves' view, violates the Act's plain language.

But Swift's policy cannot be viewed as direct evidence of discrimination because the Act merely requires employers to "ignore" employee pregnancies. *See Spivey v. Beverly Enters.*, 196 F.3d 1309, 1313 (11th Cir. 1999); *Urbano v. Cont'l Airlines*, 138 F.3d 204, 206 (5th Cir. 1998) ("[A]n employer is obliged to ignore a woman's pregnancy . . ."); *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 738 (7th Cir. 1994).

Swift's light-duty policy is indisputably pregnancy-blind. It simply does not grant or deny light work on the basis of pregnancy, childbirth, or related medical conditions. It makes this determination on the nonpregnancy-related basis of whether there has been a work-related injury or condition. Pregnancy-blind policies of course can be tools of discrimination. But challenging them as tools of discrimination requires evidence and inference beyond such policies' express terms.

Swift's pregnancy-blind policy, therefore, cannot serve as direct evidence of Swift's alleged discrimination against Reeves.

Reeves has produced no circumstantial evidence indicating that Swift's policy is a pretext for discrimination, or that Swift terminated her with discriminatory intent. In pregnancy discrimination cases, this circuit uses the three-stage *McDonnell Douglas* burden-shifting test to evaluate circumstantial evidence. *See Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 658 (6th Cir. 2000). First, the plaintiff establishes a prima facie case for discrimination. *See id.* We assume without deciding that Reeves has established a prima facie case for pregnancy discrimination.[1] Swift's attorney conceded at oral argument that Reeves has a prima facie case.

Second, the burden of production shifts to the defendant-employer to produce evidence establishing a nondiscriminatory reason for the conduct in question. *See Turic v. Holland Hospitality*, 85 F.3d 1211, 1214 (6th Cir. 1996). Swift has met its burden to come forward with evidence that it fired Reeves for reasons unrelated to her pregnancy. Swift says that Reeves was terminated not on account of her pregnancy but because she could not perform the heavy lifting required of truck drivers. It is not genuinely disputed that truck drivers must be capable of performing heavy lifting. Swift has therefore carried its burden to produce evidence of a nondiscriminatory reason for its actions.

---

[1]There is accordingly no need to apply this court's holding in *Ensley-Gaines v. Runyon*, 100 F.3d 1220 (6th Cir. 1996). *Ensley-Gaines* primarily dealt with whether a prima facie case had been established under the Pregnancy Discrimination Act, and its reasoning does not control this case at the pretext stage of the *McDonnell Douglas* analysis. The facts that prompted us in *Ensley-Gaines* to find a genuine issue of material fact at the pretext phase have no parallel in this case. *See id.* at 1227 (defendant's reason for not providing a stool due to safety concerns was challenged by plaintiff with evidence that use of the stool posed no safety risks and that stools had been offered to others).

Third and finally, after the defendant supplies adequate evidence of a nondiscriminatory reason for its actions, the burden of production returns to the plaintiff to show discrimination by a preponderance of the evidence or that the defendant's proffered reason is a pretext for discrimination. *See id.*; *Boyd v. Harding Acad.*, 88 F.3d 410, 413 (6th Cir. 1996).

This action has been brought under the theory of disparate treatment. Consequently, Reeves cannot avoid summary judgment at stage three unless a rational juror could find that "the employer *intended* to discriminate against the protected group." *Armstrong v. Flowers Hosp.*, 33 F.3d 1308, 1313 (11th Cir. 1994) (emphasis added). No rational juror could find intentional discrimination on this record. Reeves has supplied no Rule 56 evidence indicating that Swift adopted its policy as a pretext for pregnancy discrimination. Nor has Reeves produced evidence tending to prove a discriminatory motive. Tellingly, Reeves does not even *allege* anywhere in her brief that Swift acted with discriminatory intent. She comes closest to alleging invidious intent when she says that she can reach a jury if evidence tends to prove that Swift fired her with a "mixed motive." But she has not come forward with such evidence; nor has she expressly stated in her brief that Swift harbored any such mixed motive.

The legal theory Reeves has chosen—disparate treatment—requires her to allege and prove discriminatory intent. *See id.* Because she has not fulfilled that obligation, the district court properly found that Reeves' circumstantial case raises no genuine issue of material fact.

We accept, moreover, the reasoning of the Fifth and Eleventh circuits rejecting claims materially identical to Reeves'. In a case involving an identical light-duty policy, a unanimous Fifth Circuit panel held that ruling for the plaintiff would have the effect of granting a right of special treatment for pregnant employees. The Fifth Circuit held for the defendant because the Act requires only equal treatment:

> In this case, Continental treated Urbano the *same as it treats any other worker who suffered an injury off duty*. There is no probative evidence that Continental's distinction between occupational and off-the-job injuries was a pretext for discrimination against pregnant women or that it had a disparate impact on them. Urbano's claim is thus not a request for relief from discrimination, but rather a demand for *preferential treatment*; it is a demand not satisfied by the PDA. As long as pregnant employees are treated the same as other employees injured off duty, the PDA does not entitle pregnant employees with non-work related infirmities to be treated the same under Continental's light-duty policy as employees with occupational injuries.

*Urbano v. Cont'l Airlines*, 138 F.3d 204, 208 (5th Cir. 1998) (emphasis added) (footnote omitted). The Eleventh Circuit reached the same conclusion when evaluating another materially identical light-duty policy. In doing so, the unanimous panel rejected the argument advanced by Reeves and observed that this argument attempts to recast special treatment as equal treatment:

> Appellant argues, however, that she should have been given the accommodation of modified duty because she was *as capable of performing the duties required of a modified duty assignment as non-pregnant employees who were injured on the job*. Appellee, however, was under no obligation to extend this accommodation to pregnant employees. The PDA does not require that employers give *preferential treatment* to pregnant employees. Appellee was therefore free to provide an accommodation to employees injured on the job without extending this accommodation to pregnant employees.

*Spivey v. Beverly Enters.*, 196 F.3d 1309, 1312-13 (11th Cir. 1999) (citations omitted) (emphasis added). The district court correctly noted that Reeves' view of the law demands preferential, not equal treatment, and therefore finds no support in the Act.

For the foregoing reasons, the district court's judgment is affirmed.